RECEIVED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JUN 3 0 2017

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

DANIEL L. BYRD,
MARION M. BYRD

Individually,

                                    Plaintiffs,

        v.

VOLKSWAGEN GROUP OF
AMERICA, INC.,

                                    Defendant.

No.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

# 1:17-CV-2464

# I.    INTRODUCTION

Plaintiffs (Daniel Byrd and Marion Byrd) individually allege the following against Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen"), based where applicable on personal knowledge, information, belief, and investigation.

## NATURE OF THE ACTION

1.    This action concerns a global auto manufacturer's intentional deception of well-meaning, conscientious consumers and regulators, and its misguided plan to profit by gaming the system rather than playing by the rules.

2.    This case concerns the intentional installation of so-called defeat devices on over 482,000 diesel Volkswagen and Audi vehicles sold in the United States since 2009 ("Defeat Device Vehicles"). Defendant marketed those vehicles as environmentally-friendly cars that possessed the holy grail of automotive qualities: extremely high fuel efficiency and performance, with very low emissions. Although Defendant successfully marketed these expensive

2

cars as "green," their environmentally-friendly representations were a sham. Defendant did not actually make cars with those desirable and advertised attributes.

3.      According to the U.S. Environmental Protection Agency (EPA), Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles: Model Year 2009-2015 VW Jetta; 2009-2014 Jetta Sportwagen; 2009-2015 VW Beetle and Beetle Convertible; 2009-2015 VW Golf; 2015 Golf Sportwagen; 2012-2015 VW Passat; and 2009- 2015 Audi A3, and any other vehicle powered by Volkswagen's 2.0 liter four- cylinder engine/Type EA 189 engine. Several agencies are currently investigating whether the Defendant installed the device in other cars as well, so additional vehicle models and model years may be added to this list when new facts are discovered.

4.      Instead of delivering on their promise of extremely high fuel mileage coupled with low emissions, Defendant devised a way to make it *appear* that their cars did what they said they would when, in fact, they did not. Put simply, Defendant lied.

5.      The defeat devices Defendant designed and installed work by switching on the full emissions control systems in Defendant's cars *only* when the

3

car is undergoing periodic emissions testing. The technology needed to control emissions from Defendant's cars to meet state and federal emissions regulations reduces their performance, limiting acceleration, torque, and fuel efficiency.

6.     To hide this, the defeat device simply shuts off most of the emissions control systems in the car once the car has completed its emissions test. While that might have made the car more fun to drive, it resulted in Defendant's cars sending up to 40 times as much pollution into the environment as is allowed under the Clean Air Act and state regulations.

7.     Those violations are explained in a Notice of Violation the  EPA issued to Defendant, a copy of which are attached to this Complaint as Exhibit A.

## II.     PARTIES

8.     Plaintiff Daniel Byrd, is a person that resides in and is a citizen of Canton, GA (Cherokee County).

9.     Plaintiff Marion Byrd, is a person that resides in and is a citizen of Canton, GA (Cherokee County).

4

10.     Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in every U.S. state and the District of Columbia, and is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a citizen of New Jersey and Virginia. *See* 28 U.S.C. § 1332(d)(10).

11.     At all relevant times, Volkswagen manufactured, distributed, sold, leased, and warranted the Defeat Device Vehicles under the Volkswagen and Audi brand names throughout all of the United States, and including but not limited to Georgia, North Carolina, South Carolina, and Tennessee. Volkswagen and/or its agents designed the CleanDiesel engines and engine control systems in the Defeat Device Vehicles, including the "defeat device." Volkswagen also developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Defeat Device Vehicles.

## III.    ANY OTHERWISE-APPLICABLE STATUTES OF LIMITATION ARE TOLLED

12.     The tolling doctrine was made for cases of concealment like this one. For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

13.     Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiffs and members of the proposed case could not have discovered that Volkswagen was concealing and misrepresenting the true emissions levels of its vehicles, including but not limited to its use of

defeat devices.

14. As reported in the *New York Times* on September 19, 2015, the International Council on Clean Transportation, a research group, first noticed the difference between Volkswagen's emissions in testing laboratories and in normal use on the road. The International Council on Clean Transportation brought the defeat device issue to the attention of the EPA. The EPA, in turn, conducted further tests on the vehicles, and ultimately uncovered the unlawful use of the defeat device software. Thus, Volkswagen's deception with respect to its CleanDiesel engines, engine control systems, and "defeat devices" was painstakingly concealed from consumers and regulators alike.

15. Plaintiffs could not reasonably discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen intentionally failed to report information within its knowledge to federal and state authorities, its dealerships, or consumers.

16. Likewise, a reasonable and diligent investigation could not have disclosed that Volkswagen had information in its sole possession about the existence of its sophisticated emissions deception and that it concealed that information, which was discovered by Plaintiffs before this action was filed. Plaintiffs could not have previously learned that Volkswagen valued profits over compliance with applicable federal and state emissions and consumer law.

17.    Throughout the relevant time period, all applicable statutes of limitation have been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged in this Complaint.

18.    Instead of disclosing its emissions deception, or that the emissions from the Defeat Device Vehicles were far worse than represented, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

19.    Volkswagen was under a continuous duty to disclose to Plaintiffs the facts that it knew about the emissions from Defeat Device Vehicles, and of those vehicles' failure to comply with federal and state laws.

20.    Although it had the duty throughout the relevant period to disclose to Plaintiffs that it had engaged in the deception described in this Complaint, Volkswagen chose to evade federal and state emissions and clean air standards with respect to the Defeat Device Vehicles, and it intentionally misrepresented its blatant and deceptive lack of compliance with state law regulating vehicle emissions and clean air.

21.    Thus, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## IV.   JURISDICTION AND VENUE

22.   This Court has personal jurisdiction over Defendant because it conducts business in Georgia, and has sufficient minimum contacts with Georgia. Defendant is also registered with the Georgia Secretary of State, Georgia Corporations Division, with control number number H950230, and has various dealerships in Georgia, including without limitation Jim Ellis Volkswagen in Kennesaw, Georgia.

23.   Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendant has caused harm to members residing in this District.

## V.   FACTS

24.   Defendant intentionally designed and sold cars that misled consumers and regulators about the amount of pollution those cars created and the fuel efficiency they produced. Despite touting themselves as an environmentally conscientious company that produced thoughtful cars for people who cared about the environment, Defendant sold expensive cars that produced pollution at orders of a magnitude above federal and state regulations, and then intentionally and knowingly hid the truth about those cars.

**A.    Defendant Touts their Diesel Vehicles as Being Fuel Efficient and Good for the Environment**

25.    For years, Volkswagen has advertised its diesel vehicles as low-emission, fuel-efficient cars. Indeed, this marketing message is at the core of its image in the United States. It has been a successful advertising campaign; Volkswagen has become the largest seller of diesel passenger vehicles in the United States.



26.    Defendant's success is based in large part on promoting their diesel cars as "clean" and "green" vehicles. Indeed, being both highly efficient and "clean" are the centerpieces of Defendant's diesel engine marketing campaign. "CleanDiesel" is in the very name of the vehicles about which Defendant lied.

27.    Defendant's apparent concern for the environment is evident beyond just the model names and purported attributes of their vehicles. For example, on the "Environment" page of its website, Volkswagen Group of America states that it takes "environmental responsibility very seriously.

When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

28. Defendant bolsters its apparent environmental bone fides by trumpeting the fact that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

29. Defendant also launched a "Think Blue" program, which they explained is part of their policy of being "more responsible on the road and more environmentally conscious—not just in our cars."

30. Beyond merely advertising, Defendant supported and directed a website to promote its "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

31. Defendant goes for far as to use the tagline "Truth in Engineering" to promote its Audi brand:



32.     Unfortunately for consumers who bought Defendant's cars and for people who breathe the air into which Defendant's cars emit extraordinary amounts of pollutants, Defendants engineering was far from "truthful." Defendant has designed and sold cars that emit pollutants at breath-taking levels, failing state and federal environmental regulations by incredible margins.

**B.     Volkswagen Intentionally Hid the Excessive and Illegal Levels of Pollution Emitted from its Cars.**

33.     Contrary to Volkswagen's self-promotion as a "green" company, its diesel cars are unhealthy and unlawful.

34.     On September 18, 2015, the EPA issued a Notice of Violation ("NOV"). The NOV explains that Defendant has installed sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant in the United States that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. At all other times that the vehicle is running, however, the emissions controls are deactivated, meaning that pollution is freely released into the environment at levels that exceed those allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

35.     Most modern engines, including Volkswagen's "CleanDiesel" engines, use computerized engine control systems to monitor sensors throughout a

car's engine and exhaust systems and control operation of the car's systems to ensure optimal performance and efficiency. These functions can include controlling fuel injection, valve and ignition timing, and, as in Volkswagen's "CleanDiesel" engines, operating the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, amount of air flowing into the engine, and engine temperature.

36.    These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

37.    Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the  car's exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a

measurement probe inserted into the car's exhaust pipe to measure the chemicals emitted.

38.     Volkswagen programmed the engine control computers in the Defeat Device Vehicles with software that detects when the cars are undergoing emissions testing, and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA pollutant standards. When the car is not being emissions tested—that is, under the vast majority of operating conditions—the engine control systems operate the vehicle in a manner that does not comply with EPA emissions requirements.

39.     In short, this software allows Defendant's diesel vehicles to meet emissions standards in labs or state testing stations, while permitting the vehicles to emit nitrogen oxides (NOx) at *up to 40 times the standard* allowed under United States laws and regulations during the normal operation of the vehicles.

40.     NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing

respiratory illness are at an acute risk of health effects from these pollutants.

41.    The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal laws.

42.    Defendant has now admitted to cheating on U.S. emissions testing. *See* http://www.bloomberg.com/news/articles/2015-09-18/epa-says-volkswagon-software-circumvented-car-emissions-testing, last accessed on November 21, 2015.

**C.    Defendant Has Profited Handsomely From Their Diesel Vehicles.**

43.    Defendant charges substantial premiums for the Defeat Device Vehicles. For example, for the 2015 Volkswagen Jetta, the base S model with a gasoline engine has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The

CleanDiesel premium for the highest trim Jetta models with a comparable gasoline engine is substantially higher: The Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a 31% premium.

44.    These premiums occur across all of the vehicles in which Defendant installed its "defeat device" for emissions testing. The table below sets forth the price premium for each comparable base, mid-level, and top-line trim for each affected model:

### CleanDiesel Price Premiums

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golg | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

**D.    Volkswagen's Illegal Actions Have Caused Plaintiffs Significant Harm.**

45.    Although the EPA has ordered Defendant to recall the Defeat Device Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation, purchasers of the Defeat Device Vehicles have

and will continue to suffer significant harm. First, Volkswagen will not be able to make the Defeat Device Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Plaintiffs Defeat Device Vehicles EPA compliant, Plaintiffs will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.

46.     Second, this will necessarily result in a diminution in value of every Defeat Device Vehicle. Not only did Plaintiffs pay too much for cars now worth substantially less, but they will end up paying more to fuel their less efficient cars over the years they own their vehicles.

47.     As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit 40 times the allowed levels, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property.

48.     Had Plaintiffs known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the

vehicles than they did. Moreover, when and if Volkswagen recalls the Defeat Device Vehicles and degrades the CleanDiesel engine performance in order to make the Defeat Device Vehicles compliant with EPA standards, Plaintiffs will be required to spend more on fuel and will not benefit from the performance qualities of their vehicles as advertised. Moreover, Defeat Device Vehicles will necessarily be worth less in the used marketplace because of their decrease in performance and efficiency, which means that owners of Defeat Device Vehicles will not be able to recoup nearly as much value in the future.

49.    Volkswagen's deliberate strategy to value profit over the truth, human health, and the environment, has caused serious harm to consumers nationwide.

50.    According to media sources, Defendant's CEO, Martin Winterkorn, said in a statement that he was "deeply sorry that we have broken the trust of our customers and the public," and that Defendant would be suspending sales of some 2015 and 2016 vehicles with 2.0 liter diesel engines. While Defendant's candor about its breach of trust is notable, it cannot compensate Plaintiffs for the damages they have incurred.

## VI.   PLAINTIFFS' FACTS

51.    Plaintiffs purchased one 2014 Jetta Diesel for use due to its advertised superior power, efficiency, and emissions.

The Plaintiffs would not have paid a premium for its Jetta if it had known the truth about its fuel efficiency and emissions, and it would not have purchased its Jetta if it knew it included an unlawful defeat device. It feels that Volkswagen has lied to it. The Plaintiffs intends to resell its car in the future, and is very concerned about its resale value going forward, its increased fuel costs, and potential lost good will and rapport with certain customers who value eco-friendly sale's vehicles.

52.    Plaintiff Daniel Byrd purchased the 2014 Jetta diesel in 2014 after much research regarding clean diesel vehicles in an attempt to reduce his environmental impact, and based on the advertised superior power, efficiency, and cleaner emissions. The purchase was made at Jim Ellis Volkswagen of Kennesaw, GA. Mr. Byrd would not have paid a premium for his Jetta if he had known the truth about its fuel efficiency and emissions, and he would not have purchased his Jetta if he knew it included an unlawful defeat device. He feels that Volkswagen has lied to him. Mr. Byrd intends to resell its car in the future, and he is very concerned about its resale value going forward, its increased fuel costs, and its environmental impact.

## VII.   CAUSES OF ACTION

### A. Claims Asserted on Behalf of the Plaintiffs

### COUNT I
### Fraud by
### Concealment
### (Common Law)

53.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

54.    Plaintiffs bring this claim individually.

55.    Volkswagen intentionally concealed and suppressed material facts concerning the quality and character of the Defeat Device Vehicles. As alleged in this Complaint, Volkswagen engaged in deception to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutants, which contributes to the creation of ozone and smog.

56.    The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Defendant's intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret deception resulted in noxious emissions from these vehicles at 40 times applicable standards.

57. Plaintiffs reasonably relied upon Volkswagen's false representations which were made to Plaintiffs. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiffs did not, and could not, unravel Volkswagen's deception on their own.

58. Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs placed in its representations.

59. Necessarily, Volkswagen also took steps to ensure that its employees did not reveal the details of its deception to regulators or consumers, including Plaintiffs. Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable laws and regulations.

60.   Volkswagen's false representations were material to consumers, both because they concerned the quality of the Defeat Device Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen well knew, its customers, including Plaintiffs, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

61.   Volkswagen had a duty to disclose the emissions deception it engaged in with respect to the vehicles at issue because knowledge of the deception and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its deception, and because Volkswagen knew the facts were unknown to or reasonably discoverable by Plaintiffs.

62.   Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.

63.     Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the value of the Defeat Device Vehicles purchased or leased by Plaintiffs. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had thoroughly subverted the testing process.

64.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs.

65.     On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions deception.

66.     Plaintiffs were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public or Plaintiffs.

67.     Because of the concealment and/or suppression of the facts, Plaintiffs have sustained damages because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs been aware of Volkswagen's emissions deceptions with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

68.    The value of Plaintiffs' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

69.    Accordingly, Volkswagen is liable to Plaintiffs for damages in an amount to be proven at trial.

70.    Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

71.    Plaintiffs plead this count pursuant to the law of Virginia, where Volkswagen has its American headquarters.

72.    Alternatively, Plaintiffs also plead this count pursuant to the law of Georgia, where the Plaintiffs reside, purchased, and used their Jetta.

## COUNT II
### Breach of Contract

73.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

74.    Plaintiffs bring this Count on their own personal behalf.

75.    Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused to make their purchase of their Defeat Device Vehicle. Absent those misrepresentations and omissions, Plaintiffs would not have purchased or leased these Defeat Device Vehicles, would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device." Accordingly, Plaintiffs overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

76.    Each and every sale or lease of a Defeat Device Vehicle constitutes a

contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiffs defective Defeat Device Vehicles and by misrepresenting or failing to disclose the existence of the "defeat device" and/or defective design, including information known to Volkswagen rendering each Defeat Device Vehicle less safe and emissions compliant,

and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

77.     As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

78.     Alternatively, Plaintiffs also plead this count pursuant to the law of Georgia, where the Plaintiffs, purchased, and used their Jetta.

## COUNT III
## Breach of Express Warranty

79.     Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

80.     Plaintiffs bring a cause of action against Defendant for breach of express warranty.

81.     Defendant made numerous representations, descriptions, and promises to Plaintiffs regarding the performance and emission controls of its diesel vehicles.

82.     Defendant, however, knew or should have known that its representations, descriptions, and promises were false. Defendant was aware that it had installed defeat devices in the vehicles it sold to Plaintiffs.

83.     Plaintiffs reasonably relied on Volkswagen's representations in

purchasing "clean" diesel vehicles. Those vehicles, however, did not perform as

was warranted. Unbeknownst to Plaintiffs, those vehicles included devices that

caused their emission reduction systems to perform at levels worse than

advertised. Those devices are defects. Accordingly, Volkswagen breached its

express warranty by providing a product containing defects that were never

disclosed to the Plaintiffs.

84.    As a direct and proximate result of Volkswagen's false and

misleading representations and warranties, Plaintiffs suffered significant damages

and seek the relief described below.

85.    Alternatively, Plaintiffs also plead this count pursuant to the law of

Georgia, where the Plaintiffs reside, purchased, and used their Jetta.

## COUNT IV
### Breach of Implied Warranty

86.    Plaintiffs incorporate by reference each and every prior and

subsequent allegation of this Complaint as if fully restated here.

87.    Plaintiffs bring this cause of action against Volkswagen for breach of

implied warranty on behalf of themselves.

88.    Volkswagen made numerous representations, descriptions, and

promises to Plaintiffs regarding the functionality of Volkswagen's "clean" diesel

technology.

89.    Plaintiffs reasonably relied on Volkswagen's representations in

purchasing the Defeat Device vehicles.

90.    As set forth throughout this Complaint, Volkswagen knew that its representations, descriptions and promises regarding its diesel engines were false.

91.    When Plaintiffs purchased Volkswagen's diesel vehicles, they did not conform to the promises or affirmations of fact made in Volkswagen's promotional materials, including that the vehicles were designed to meet the most demanding environmental standards. Instead, as alleged above, those vehicles were designed to cheat those standards, and the vehicles emitted far higher levels of pollution than promised.

92.    Accordingly, the Defeat Device Vehicles failed to conform to Volkswagen's implied warranty regarding their functionality.

93.    As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs suffered significant injury when Volkswagen sold them cars that, it is now clear, are worth far less than the price Plaintiffs paid for them. Accordingly, Plaintiffs seek the relief described below.

94.    Alternatively, Plaintiffs also plead this count pursuant to the law of Georgia, where the Plaintiffs reside, purchased, and used their Jetta.

## COUNT V

## Magnuson - Moss Act (15 U.S.C. §§ 2301, *et seq.*)—Implied Warranty

95.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

96.    Plaintiffs assert this cause of action on behalf of themselves.

97.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 2301(3).

98.    Volkswagen's Defeat Device Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

99.    Plaintiffs are "consumers," as that term is defined in 15 U.S.C. § 2301(3)

100.    Volkswagen is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

101.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

102.    Volkswagen provided Plaintiffs with "implied warranties," as that term is defined in 15 U.S.C. § 2301(7).

103.    Volkswagen has breached these implied warranties as described in more detail above. Without limitation, Volkswagen's Defeat Device vehicles are defective, as described above, which resulted in the problems and failures also described above.

104. By Volkswagen's conduct as described herein, including Volkswagen's knowledge of the defects inherent in the vehicles and its action, and inaction, in the face of the knowledge, Volkswagen has failed to comply with its obligations under its written and implied promises, warranties, and representations.

105. In its capacity as a warrantor, and by the conduct described herein, any attempts by Volkswagen to limit the implied warranties in a manner that would exclude coverage of the defective software and systems is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective the software and supporting systems is null and void.

106. All jurisdictional prerequisites have been satisfied.

107. Plaintiffs are in privity with Volkswagen in that they purchased the software from Volkswagen or its agents.

108. As a result of Volkswagen's breach of implied warranties, Plaintiffs are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. §2310.

## COUNT VI
## Unjust Enrichment

109. Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

110. Plaintiffs bring this count on behalf of themselves.

111.  Plaintiffs conferred a benefit on Defendant by, *inter alia*, using (and paying for) its vehicle.

112.  Defendant has retained this benefit, and know of and appreciate this benefit.

113.  Defendant was and continues to be unjustly enriched at the expense of Plaintiffs.

114.  Defendant should be required to disgorge this unjust enrichment.

115.  Alternatively, Plaintiffs also plead this count pursuant to the law of Georgia, where the Plaintiffs reside, purchased, and used their Jetta.

## COUNT V
### Violation of Georgia's Fair Business Practices Act
### (GA. CODE ANN. § 10-1-390, et seq.)

116.  Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

117.  Plaintiffs intend to assert a claim personally under the Georgia Fair Business Practices Act ("Georgia FBPA") which declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, GA. CODE. ANN. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular Standard, quality, or grade... if they are of another," and "[a]dvertising goods or

services with intent not to sell them as advertised." GA. CODE. ANN. § 10-1-393(b). Plaintiffs will make a demand in satisfaction of GA. CODE. ANN. § 10-1-399, and may amend this Complaint to assert claims under the Georgia FBPA once the required 30 days have elapsed. This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

## COUNT X
## VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (GA. CODE ANN. § 10-1-370, et seq.)

118.   Plaintiff asserts this Count individually.

119.   Volkswagen, Plaintiff, are "persons' within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE. ANN. § 10-1- 371(5).

120.   The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." GA. CODE. ANN. § 10-1-372(a). By fraudulently installing the "defeat device" to make it appear that its CleanDiesel engine systems complied with EPA regulations, Volkswagen engaged in deceptive trade practices prohibited by the Georgia UDTPA.

121.   In the course of its business, Volkswagen installed the "defeat device" and concealed that its CleanDiesel systems failed EPA regulations as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Defeat Device Vehicles.

122.   Volkswagen has known of its use of the "defeat device" and the true nature of its CleanDiesel engine system for at least six years, but concealed all of that information until recently.

123.   Volkswagen was also aware that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations. Volkswagen concealed this information as well.

124.   By failing to disclose and by actively concealing the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, by marketing its vehicles as safe, reliable, environmentally clean, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles after they were sold, Volkswagen engaged in deceptive business practices in violation of the Georgia UDTPA.

125.   In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the use of the "defeat device" and true cleanliness and efficiency of the CleanDiesel engine system and serious defects discussed above. Volkswagen compounded the deception by repeatedly asserting that the Defeat Device Vehicles were safe, reliable, environmentally clean, efficient, and of high quality, and by claiming to be a reputable manufacturer that valued safety, environmental cleanliness and efficiency, and stood behind its vehicles once they are on the road.

126.   Volkswagen's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true cleanliness and efficiency of the CleanDiesel engine system, the quality of the Volkswagen and Audi brands, the devaluing of environmental cleanliness and integrity at Volkswagen, and the true value of the Defeat Device Vehicles.

127.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Defeat Device Vehicles with an intent to mislead Plaintiffs.

128.   Volkswagen knew or should have known that its conduct violated the Georgia UDTPA.

129.   As alleged above, Volkswagen made material statements about the safety, cleanliness, efficiency and reliability of the Defeat Device Vehicles and the Volkswagen and Audi brands that were either false or misleading.

130. Volkswagen owed Plaintiffs a duty to disclose the true safety, cleanliness, efficiency and reliability of the Defeat Device Vehicles and the devaluing of environmental cleanliness and integrity at Volkswagen, because Volkswagen:

    a. Possessed exclusive knowledge that it valued profits over environmental cleanliness, efficiency, and lawfulness, and that it was manufacturing, selling and distributing vehicles throughout the United States that did not comply with EPA regulations;

    b. Intentionally concealed the foregoing from Plaintiffs; and/or

    c. Made incomplete representations about the safety, cleanliness, efficiency and reliability of the Defeat Device Vehicles generally, and the "defeat device" and true nature of the CleanDiesel engine system in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

131. Because Volkswagen fraudulently concealed the "defeat device" and the true cleanliness and performance of the CleanDiesel engine system, resulting in a raft of negative publicity once the use of the "defeat device" and true characteristics of the CleanDiesel engine system finally began to be disclosed, the value of the Defeat Device Vehicles has greatly diminished. In light of the stigma attached to those vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

132.   Volkswagen's fraudulent use of the "defeat device" and its concealment of the true characteristics of the CleanDiesel engine system were material to Plaintiffs. A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of environmentally dirty vehicles that conceals its polluting engines rather than promptly remedying them.

133.   Plaintiffs suffered ascertainable loss caused by Volkswagen's misrepresentations and its concealment of and failure to disclose material information.

134.   Volkswagen had an ongoing duty to all Volkswagen and Audi customers to refrain from unfair and deceptive acts or practices under the Georgia UDTPA. All owners of Defeat Device Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Volkswagen's deceptive and unfair acts and practices made in the course of Volkswagen's business.

135.   Volkswagen's violations present a continuing risk to Plaintiffs as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

136.   As a direct and proximate result of Volkswagen's violations of the Georgia UDTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

137.   Plaintiffs seek an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per GA. CODE. ANN § 10-1-373.

## X. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

A.   Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

B.   Revocation of acceptance;

C.   Damages under the Magnuson-Moss Warranty Act;

D.   For treble and/or punitive damages as permitted by applicable laws;

E.   An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

F.   An award of costs and attorneys' fees; and

G.   Such other or further relief as may be appropriate.

## XI. DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial.

DATED:  July 8, 2017.

/s/ Daniel L. Byrd
danbyrd23@gmail.com
268 Lingefelt Ln #1A
Canton, GA 30115
Tel: 727-326-4748

## CERTIFICATE OF COMPLIANCE

This is to certify that the foregoing has been prepared using Times New Roman 14 point font and is double spaced.

This 8th day of July, 2017.

/s/ Daniel L. Byrd
danbyrd23@gmail.com
268 Lingefelt Ln #1A
Canton, GA 30115
Tel: 727-326-4748